**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GUARANTY RESIDENTIAL LENDING, INC.,
a Nevada corporation and ASSURAFIRST
FINANCIAL COMPANY, a Michigan corporation
d/b/a HOMESTEAD USA and HOMESTEAD
MORTGAGE,

       Plaintiffs, Counter-Defendants,        CASE NO.  04-74842

v.                                   PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

HOMESTEAD MORTGAGE COMPANY,
L.L.C., a Michigan corporation,
CENDANT MORTGAGE CORP. d/b/a
COLDWELL BANKER MORTGAGE,

       Defendant, Counter-Plaintiff,

BOB FITZNER d/b/a HOMESTEAD MORTGAGE
COMPANY, an individual,

       Counter-Plaintiff.
_____/

**AMENDED[1] OPINION AND ORDER:**
**(1) DENYING PLAINTIFFS/COUNTER-DEFENDANTS GUARANTY RESIDENTIAL**
**LENDING AND ASSURAFIRST'S MOTION TO DISMISS THE JULY 5, 2005**
**COUNTER-COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) FOR**
**LACK OF STANDING (DOCKET NO. 75);**
**(2) HOLDING THAT COUNTER-PLAINTIFFS LACK CAPACITY TO BRING OR**
**DEFEND A SUIT REGARDING THE HOMESTEAD MORTGAGE TRADEMARK**

      Now before the Court is Plaintiffs/Counter-Defendants' Motion to Dismiss the July 5,

2005 Counter-Complaint (Docket No. 75).  The Court held a motion hearing on August 29,

---

     [1] The only change made by the Court in the Amended Opinion is the underlined date on
page 17.

2006.  Having considered the entire record, and for the reasons that follow, the Court DENIES

Counter-Defendants' Motion to Dismiss the July 5, 2006 Counter-Complaint.  Additionally, the

Court holds that Counter-Plaintiffs lack capacity to bring or defend a suit regarding the

HOMESTEAD MORTGAGE trademark.

## I.     BACKGROUND

Defendant/Counter-Plaintiff Homestead Mortgage L.L.C. ("Homestead"), is a Michigan

corporation with its principal place of business based in Macomb Township, Michigan.

(Counter-Pls.' Countercl. ¶ 3).  Counter-Plaintiff Bob Fitzner ("Fitzner") is an individual

residing in Austin, Texas.  (*Id*. at ¶ 4).  Fitzner incorporated Bob Fitzner, Inc. ("BFI.") in Texas

on April 21, 1992.  (Dec. 13, 2005, Opinion and Order 2).

Plaintiff/Counter-Defendant Guaranty Residential Lending Inc. ("Guaranty"), is a

Nevada corporation with its principal place of business in Austin, Texas.  (Counter-Pls.'

Countercl.  ¶ 5).  Plaintiff/Counter-Defendant AssuraFirst Financial Company ("AssuraFirst"),

doing business as "Homestead USA" and "Homestead Mortgage,"  is a Michigan corporation

with its principal place of business in Southfield, Michigan.  (*Id*. at ¶ 6).  Guaranty and

AssuraFirst (collectively "Plaintiffs/Counter-Defendants") provide, offer, market, and facilitate

mortgage services for real estate transactions, as well as other financial and mortgage related

transactions.  (Counter-Pls.' Countercl. ¶ 10).

Homestead was formed by Darren Chase.  Chase, who previously operated as a mortgage

broker, had maintained a business relationship with Guaranty and had prior knowledge of the

marks at issue in this case.  (Jan. 14, 2005, Opinion and Order 3).

On November 8, 1993, BFI registered the "Homestead Mortgage" mark (the "Mark")

with the United States Patent and Trademark Office on March 12, 1996. (*Id*.). Fitzner claims that Fitzner, BFI, and/or any predecessor-in-interest have used the Mark in Texas since June of 1992. (Counter-Pls.' Br. Ex A, Service Mark Principal Register). According to the Certificate of Registration for "Homestead Mortgage," BFI alleged the Mark was first used in August of 1991. (*Id*.).

Homestead and Fitzner (collectively "Counter-Plaintiffs") claim that Fitzner is the owner of all right, title, and interest in the "Homestead Mortgage" mark (U.S. Trademark Registration No. 196129). (*Id*.). Counter-Plaintiffs also claim that Guaranty and AssuraFirst "actively and continuously" used one or more of the following marks in association with mortgage related services: "Homestead," "Homestead Mortgage," "Homestead USA," "Homestead Mortgage USA, Inc.," "Homestead Mortgage Company," and "Homestead Funding USA, Inc." (Dec. 13, 2005, Opinion and Order 3).

In May of 1998, a Michigan corporation operating under the name of Homestead Mortgage Company ("HMC"), as predecessor-in-interest to Counter-Defendants, applied for registration of the mark "Homestead Mortgage" for mortgage lending and brokerage services with the Patent and Trademark Office. (*Id*.). The application was denied by the Examining Attorney on the ground that HMC's use of the Mark would cause confusion with the "Homestead Mortgage" mark owned by BFI (*Id*.). Despite the denial of its application, HMC expanded their use of the Mark to Texas, as early as 1999.[2] (Dock. No. 111, Counter-Defs.' Supplemental Br. 5-6).

---

[2] Plaintiffs/Counter-Defendants allege that the Mark was used in the same counties in Texas in which Fitzer and BFI used the Mark.

On August 1, 2001, Fitzner filed for personal bankruptcy in the Northern District of

Texas.[3]  (Counter-Pls.' Resp. Ex. D).  BFI's *corporate privileges* had been previously forfeited

on March 20, 2001 for failure to satisfy Texas franchise tax requirements, and BFI forfeited its

*corporate charter* on March 22, 2002, pursuant to Section 171.309 of the Texas Tax Code.

(Counter-Defs.' Br. Ex C, Forfeiture Determination).  Fitzner's bankruptcy case was closed on

January 29, 2002, after the Trustee reported "no assets."  A Motion to Reopen was filed by

Fitzner on January 10, 2003, and granted on February 11, 2003.  The reopened bankruptcy case

did not close until January 22, 2006.

On December 10, 2004, Guaranty filed the instant four-count Complaint against

Homestead.[4]  AssuraFirst was not a Plaintiff in the Original Complaint filed by Guaranty;

AssuraFirst was added in the Amended Complaint on June 22, 2005.  Guaranty filed a Motion

for Temporary Restraining Order and Motion for Preliminary Injunction on December 24, 2004,

seeking to prevent Homestead from using the "Homestead Mortgage" mark.  The Court granted

Guaranty's Motion for a Temporary Restraining Order on December 30, 2004.  Homestead filed

its Answer and Affirmative Defenses to Guaranty's Original Complaint on January 3, 2005.  The

Court granted Guaranty's Motion for Preliminary Injunction on January 14, 2005.

On January 17, 2005, BFI assigned the Mark to Fitzner for one dollar and valuable

---

[3] Case No. 01-70668

[4] The Counts in the Complaint (Dock. No. 1) and Amended Complaint (Dock. No. 34)
were as follows:

Count I:       Unfair Competition under 15 U.S.C. § 1125(a)
Count II:      Unjust Enrichment
Count III:     Common Law Trademark Infringement
Count IV:      Common Law Unfair Competition

consideration.  (Counter-Defs.' Br. Ex. D, Trademark Assignment).  Immediately thereafter, Homestead and Fitzner entered into a license agreement, signed by Fitzner on January 17, 2005, and by Homestead on January 26, 2005.  (Counter-Pls.' Compl. ¶ 9).  Through the license agreement, Homestead utilized the "Homestead Mortgage" mark in connection with mortgage brokerage services in Michigan, along with the right to bring suit for all past, current or future infringements of the mark.

On June 21, 2005, Guaranty and AssuraFirst filed an Amended Complaint alleging Unfair Competition under the Lanham Act, Common Law Unfair Competition, Unjust Enrichment and Common Law Trademark Infringement.  Homestead and Fitzner filed their Answer and Counterclaim to Plaintiff's Amended Complaint alleging Infringement of a Federally Registered Trademark, False Designation of Origin and Unfair Competition, and a violation of the Michigan Consumer Protection Act on July 5, 2005.

Plaintiffs/Counter-Defendants filed the instant motion on December 9, 2005.  Counter-Plaintiffs filed their response on January 6, 2006, a reply was filed on January 17, 2006; a sur-reply was filed on January 24, 2006.  The Court requested the parties provide a supplemental brief and response after Fitzner's Bankruptcy Trustee Shawn Brown was deposed on June 20, 2006.  Plaintiffs/Counter-Defendants filed their supplemental brief on July 19, 2006 and Counter-Plaintiffs responded on July 26, 2006.

Plaintiffs/Counter-Defendants argue that the bankruptcy estate owns the registration and therefore the Counter-Plaintiffs lack standing.  Plaintiffs/Counter-Defendants contend that Fitzner failed to schedule and itemize BFI on the 2001 bankruptcy petition.  Plaintiffs/Counter-Defendants also argue that BFI was the alter ego of Fitzner, which required Fitzner to schedule

5

the registration on his bankruptcy petition.  Plaintiffs/Counter-Defendants aver that Fitzner does

not have standing to bring the present action because he did not sustain an injury and did not

own any interest in the registration.  Further, Plaintiffs/Counter-Defendants assert that the

doctrine of judicial estoppel precludes Counter-Plaintiffs from pursuing this action because

Fitzner did not disclose his interest in BFI and that the bankruptcy court adopted Fitzner's

bankruptcy schedules, which failed to disclose, itemize, or accurately identify either BFI or the

registration.

Homestead and Fitzner respond that the corporate stock in BFI was listed on Fitzner's

Schedule B.  They also argue that the bankruptcy case name included all potential aliases of

Fitzner, including Homestead Mortgage.  Counter-Plaintiffs assert that the bankruptcy case was

reopened during the pendency of this lawsuit and that if there was a reason to participate,

Plaintiffs/Counter-Defendants could have done so at that time.  Counter-Plaintiffs contend that

there has never been a stay that prevented Fitzner from pursuing actions for property he held.

Counter-Plaintiffs aver that the Trustee abandoned the Estate on January 29, 2002, and that all

assets in the Bankruptcy Estate, including assets of BFI, reverted to Fitzner.  Counter-Plaintiffs

claim that BFI is not the alter ego of Fitzner and that there is no judicial estoppel issue in this

case.

Plaintiffs/Counter-Defendants argue in their supplemental brief that Counter-Plaintiffs

lack standing to bring their counterclaim.  Specifically, Plaintiffs/Counter-Defendants contend

that by failing to disclose to the Trustee the assets and claims relating to the registration, the

Trustee was deprived from making a determination as to their legal status.  Plaintiffs/Counter-

Defendants assert that the Trustee refused to sign an affidavit presented by Counter-Plaintiffs

which stated that the bankruptcy estate did not have an interest in the trademark case before this Court.  Plaintiffs/Counter-Defendants aver that Fitzner had a duty to disclose all legal and equitable interest in the registration as of the time of his bankruptcy filing and that this obligation continued through the duration of the case.  Plaintiffs/Counter-Defendants claim that the alleged infringement claim commenced in 1998, and therefore Fitzner should have known about it prior to his bankruptcy.  Thus, Plaintiffs/Counter-Defendants contend it should have been disclosed.  Plaintiffs/Counter-Defendants also claim that Fitzner was surely aware of the claim when the bankruptcy proceedings were reopened and that he had a duty to disclose this to the Trustee since the claim was one that arose before the original bankruptcy proceeding commenced.  Plaintiffs/Counter-Defendants argue that judicial estoppel should apply because Fitzner took no action before the bankruptcy court to get a ruling on the matter and that his actions were not the type of affirmative conduct that reveal the absence of bad faith in omitting his claims.

Counter-Plaintiffs respond that Plaintiffs/Counter-Defendants confuse legal and equitable title.  Counter-Plaintiffs aver that Fitzner owns legal title of the registration, which did not pass to him until March 8, 2002, a date after Fitzner's bankruptcy case first closed.  Counter-Plaintiffs claim that it is an issue of material fact whether the estate owned the registration.  Counter-Plaintiffs also contend that the Trustee was aware of the Michigan lawsuit, as he contacted Fitzner's bankruptcy attorney to inquire about the nature of the Michigan litigation.  Counter-Plaintiffs also assert that the Trustee was aware of the forfeiture of corporate privileges.  Lastly, Counter-Plaintiffs argue that when Fitzner filed for bankruptcy, the legal rights in the registration, including the standing to sue for infringement, never became part of the estate.

## II.     ANALYSIS

### A.     Standard

A complaint brought under Federal Rule of Civil Procedure 12(b)(6) should not be dismissed for failure to state a claim, "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Hoover v. Ronwin*, 456 U.S. 558, 587, 104 S. Ct. 1989; 80 L. Ed. 2d 590 (1984). For purposes of a motion to dismiss, the pleadings and affidavits are viewed "in a light most favorable to the Plaintiff." *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003). All factual allegations and any inferences derived from those allegations must be accepted as true. *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "If, on a [motion to dismiss] . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgement and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to represent all material made pertinent to such a motion by Rule 56." FED. R. CIV. P 12(b).

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its

> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23.  The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e).  The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd.*

*of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

"[T]he showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss." *Id.* "The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint." *Id.* (citations omitted); *see* FED. R. CIV. P. 56(e) (requiring the "nonmoving party to go beyond the pleadings."). Since Defendant relies upon evidence not included in the pleadings, the Court treats Defendant's motion as a motion for summary judgment under Federal Rule of Civil Procedure 56.

### B.  Discussion

Whether a party has standing under Article III of the Constitution "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). In every federal case, standing is a threshold inquiry, which requires the court to determine whether "a plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction to justify exercise of the court's remedial powers on his behalf." *Id.*

To meet the constitutional limitations of standing under Article III, a plaintiff must

satisfy three elements:

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical. Second, there must be a causal
> connection between the injury and the conduct complained of -- the injury has to
> be fairly traceable to the challenged action of the defendant, and not the result of
> the independent action of some third party not before the court. Third, it must be
> likely, as opposed to merely speculative, that the injury will be redressed by a
> favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation

marks omitted). The burden of establishing these elements lies with the party invoking federal

jurisdiction. *Id.* at 561.

Plaintiffs/Counter-Defendants believe that Fitzner failed to schedule and itemize his

interest in the mark on the 2001 bankruptcy petition. As a result, Plaintiffs/Counter-Defendants

claim that the trademark registration was not abandoned, but remains the property of the

bankruptcy estate, and that the Counter-Plaintiffs subsequently lack standing to bring their claim.

Plaintiffs/Counter-Defendants argue that their position is supported by Texas Tax Code

sections 171.251, 171.309, 171.310.[5] Section 171.251 covers forfeiture of corporate privileges

and states that "the comptroller shall forfeit the corporate *privileges* of a corporation on which

the franchise tax is imposed if the corporation:" (1) does not file a forfeiture report within 45

days of the forfeiture notice; (2) does not pay a tax imposed by the tax code; or "(3) does not

permit the comptroller to examine under section 171.211 of this code the corporation's records."

A corporations charter may be forfeited by the state if the corporation "does not revive its

---

[5] Section 171.310 of the Texas Tax Code states that the "forfeiture by the secretary of
state of a corporation's charter or certificate of authority under this chapter is effected without a
judicial proceeding."

forfeited corporate privileges within 120 days after the date that the corporate privileges were

forfeited."  TEX. TAX CODE § 171.309.  Under the above statutes, Plaintiffs/Counter-Defendants

contend that beneficial title to the trademark passed to Fitzner at the time BFI forfeited its

corporate privileges.  Plaintiffs/Counter-Defendants aver that since the beneficial title in the

trademark became the personal asset of Fitzner, that asset was required to be disclosed and

itemized in his bankruptcy schedule; it was not.

Counter-Plaintiffs respond that legal title to the trademark resides in Fitzner.  Counter-

Plaintiffs contend that Fitzner's disclosure of his stock and interest in Homestead Mortgage

Company was proper.  Counter-Plaintiffs argues that Fitzner did not own legal title to the mark

at the time of the bankruptcy and equitable title in the mark has no impact on anything related to

the mark.

Section 521(1) of the Bankruptcy Code:

requires the debtor to file a schedule of assets and liabilities, a schedule of current
income and current expenditures, and a statement of the debtor's financial affairs.
In addition, the code and the rules create a special obligation on the debtor in
disclosing assets.  Section 521(3) obligates the debtor to cooperate with the
trustee as necessary to enable the trustee to perform the trustee's duties.  Under
Rule 2015(a)(1), the trustee's duties include filing a complete inventory of the
debtor's property, if that has not already been done.  Further, Rule 4002(4)
specifically requires the debtor to cooperate with the trustee in the preparation of
an inventory.

*In re Kevin and Michelle Colvin*, 288 B.R. 477, 479 (Bankr.  E.D. Mich.  2003) (internal

citations and quotations omitted).  "It goes without saying that the Bankruptcy Code and Rules

impose upon bankruptcy debtors an express, affirmative duty to *disclose all assets*, including

contingent and unliquidated claims." *In re Superior Crewboats, Inc*., 374 F.3d 330, 335 (5th Cir.

2004) (emphasis added).  The property of the bankruptcy estate includes "all legal or equitable

interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

Therefore, if the trademark was a personal asset of Fitzner, he was required to disclose it on his

schedule.

Plaintiffs/Counter-Defendants proffers *In re Perry*, 345 F.3d 303 (5th Cir.  2003), to

support their argument that beneficial title in the mark belong to Fitzner.  In *In re Perry*, the

court was asked to decide whether the debtor forfeited his ability to claim the homestead

exemption on two tracts of land because of a business which was operated on the property.  The

tracts of land were in the name of a corporation of which the debtor was the sole shareholder.  *Id*.

at 307.  Before remanding the case to determine whether the operation of a mobile home and RV

park prevents the debtor's use of the homestead exemption, the court found that the debtor

"maintained a possessory interest in the [property]" on the basis that he continued to reside on

the property.  *Id*. at 314.  In finding that the bankruptcy court erred in finding the debtor had

beneficial title in the property due to its assumption that a forfeiture occurred, the Court

explained:

> The Texas Secretary of State is required by statute to forfeit the corporate
> privileges of a corporation that fails to file required reports or fails to pay annual
> franchise taxes.  If a corporation's privileged are forfeited, corporate shareholders
> acquire beneficial title to corporate assets, although legal title to the assets
> remains in the corporation.

*Id*. at 314 n.13.

Counter-Plaintiffs contest the above quote from *In Re Perry* as dicta, and argue that the

court meant to say that the Texas Secretary of State forfeits corporate charters, not corporate

privileges.  Prior to *In Re Perry*, a Texas court in *Edlund v. Bounds*, 842 S.W.2d 719 (Tex. App.

1992), held:

> The Supreme Court of Texas has held that where the Secretary of State has entered on the record in his office *forfeiture of the right of the corporation to do business* in this state, *the charter of the corporation has **not** thereby been cancelled* nor has the corporation been dissolved.  The effect of such a forfeiture is to prohibit the corporation from doing business in the state, and to deny to it the right to sue or defend in any court of the state except in a suit to forfeit its charter.  The *legal title to the assets remains in the corporation*, but the *beneficial title to the assets of the corporation is in the stockholders*.  This being true since the right to sue has been denied to the corporation by forfeiture, the stockholders, as beneficial owners of the assets of the corporation, may prosecute or defend such actions in the courts as may be necessary to protect their property rights.

*Edlund*, 842 S.W.2d at 727 (citing *Humble Oil and Refining Co. v. Blankenburg*, 235 S.W.2d 891, 894 (Tex. 1951) (emphasis added); *see also Regal Const. Co. v. Hansel,* 596 S.W.2d 150, 153 (Tex. App. 1979)*; EL T. Mexican Restaurants v. Bacon,* 921 S.W.2d 247, 251 (Tex. App. 1995).  Plaintiffs/Counter-Defendants are correct that the Comptroller forfeits the corporate privileges and the Secretary of State forfeits the corporation's charter.  *See* TEX. TAX CODE §§ 171.215 and 171.311, respectively.  *In Re Perry* is clear, however, that the forfeiture of corporate privileges transfers beneficial title to the stockholders.  In *In Re Lawley*, Case No. 04-42060, 2006 WL 2090209, *4 (Bankr. S.D. Tex. Jun. 30, 2006), the bankruptcy court found that "[w]ith respect to a corporation whose charter has been forfeited, the stockholders retain the beneficial interest in the assets of the corporation."  In order for the stockholders to retain beneficial interest, they must have had the interest prior to the forfeiture of the charter.  Indeed, the court held:

> In the proceeding at bar, prior to filing for bankruptcy, the Debtor owned 100% of the outstanding stock of El Tres. On August 23, 2003, the Secretary of State declared El Tres a forfeited entity for failure to pay franchise taxes. . . .  At the trial on the Objection to Discharge, this Court held that since the Debtor was a shareholder of El Tres, he had a beneficial interest; and therefore, once the Debtor filed for Chapter 7, the Trustee had a right to know about the Debtor's beneficial interest.

*Id.*

In the instant case, BFI's corporate privileges were forfeited on March 20, 2001.

(Counter-Defs.' Feb. 10, 2006 Summ. J. Br., Ex. I, Docket No. 88).  Under Tex. Tax Code §

171.309, BFI had 120 days to revive its forfeited corporate privileges.  Fitzner failed to do so.

Therefore, as of July 19, 2001, thirteen days before Fitzner filed for personal bankruptcy, BFI

could no longer do business legally in Texas as a corporation, and could not longer revive its

privileges.  At that time, the corporate shareholders acquired beneficial title to corporate assets,

although legal title to the assets remained in the corporation.  *M & M Constr. Co. v. Great*

*American Ins. Co.*, 747 S.W.2d 552, 555 (Tex. App. 1988) (citing *Dunagan v. Bushey*, 152 Tex.

630, 263 S.W.2d 148, 152 (Tex. 1953)).  With the loss of beneficial title, BFI no longer had the

capacity to sue.

> Capacity is a party's legal authority to go into court to prosecute or defend a suit.
> *See El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W.2d 247, 249-50 (Tex.
> App. 1995).  Under the Texas Tax Code, a corporation that has not paid its
> franchise taxes is prohibited from going into Texas state courts *to sue or defend*
> except in an action for forfeiture of charter.  Thus, a corporation that has forfeited
> its charter for failing to pay its franchise taxes has lost its capacity to go into court
> to prosecute or defend a suit.  To bring a suit and recover on a cause of action, a
> plaintiff must have both standing and capacity.  *See El T. Mexican Restaurants,*
> *Inc.*, 921 S.W.2d at 250.

*Yetiv ex rel. Treimee Corp. v. Harris County Appraisal Dist.*, Case No. 14-97-00846-CV, 1999

WL 213239, *1 (Tex. App. April 8, 1999) (emphasis added).   As a result of BFI's forfeiture of

corporate privileges, Fitzner, acquired the beneficial title to BFI's assets as the only shareholder

in BFI[6]  – including ownership of the mark.

When Fitzner filed for personal bankruptcy on August 1, 2001, all of his legal or

_____

[6] Fitzner owned 100% of the stock in BFI.

15

equitable interests became property of the bankruptcy estate, pursuant to section 521(1) of the

Bankruptcy Code.  Counter-Plaintiffs argue that Fitner's interest in BFI was abandoned.

"Abandonment presupposes knowledge. There can, as a rule, therefore be no abandonment by

mere operation of law of property that was not listed in the debtor's schedules or otherwise

disclosed to the creditors.  This principle is recognized in section 554(c) which provides that,

unless the court orders otherwise, property of the estate that is neither abandoned nor

administered in the case remains property of the estate."  COLLIER ON BANKRUPTCY ¶ 554.03

(15th rev. ed. 2006).  "Even after the case is closed, the estate continues to retain its interest in

unscheduled property."  *Id*.

> Property scheduled by a debtor but not administered is abandoned to the debtor
> upon closure of the bankruptcy.  *Rosenshein v. Kleban*, 918 F. Supp. 98, 102
> (S.D. N.Y 1996); 11 U.S.C.  554(c).  However, unabandoned, unadministered
> property cannot be abandoned by the estate, and thus remains with the estate.  *See
> id.*; § 554(d).  As such, unscheduled property remains with the estate, and
> therefore does not vest in the debtor, at the close of bankruptcy.

*Phoenix Petroleum Co. v. U.S.*, No. 98-5124, 1999 WL 521189, *5 (Fed. Cir. Jul. 23, 1999)

(unpublished).  Further, 11 U.S.C. § 554(a) requires notice and a hearing on the asset prior to

abandonment.  Here, there is no record evidence of notice or a hearing on the trademark.

Accordingly, the Court finds that beneficial title to the trademark is an unscheduled asset

in Fitzner's bankruptcy proceedings and remains property of the bankruptcy estate.

BFI forfeited its corporate charter on March 22, 2002 pursuant to Section 171.309 of the

Texas Tax Code.  However, after the privileges were forfeited by Texas, but before the charter

was revoked by Texas, BFI assigned its HOMESTEAD MORTGAGE trademark to Fitzner,

personally, on January 17, 2005.  (Counter-Defs.' Br. Ex. D, Trademark Assignment).  The

assignment assigned all right, title, and interest in the mark.  (*Id*.).  At the time of the assignment,

BFI only had legal title in the mark, as beneficial title was in the bankruptcy estate.  On January

26, 2005, Fitzner and Homestead executed a Trademark License Agreement whereby Homestead

became the owner of all right, title and interest in the mark. Because Fitzner only had legal

interest in the mark when he executed the license agreement - beneficial interest was still in the

bankruptcy estate - he could only pass legal interest to Homestead.  Since Fitzner is the licensor

of legal title in the mark and Homestead is the licensee of legal title in the mark, both parties

have standing.  That is, both parties have an "interest peculiar to the [person/party] and not to a

member of the general public."  *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1994).   However,

because the parties lack beneficial title, they lack capacity – the legal authority to go into court to

prosecute or defend a suit.

Plaintiffs/Counter-Defendants also assert that the doctrine of judicial estoppel precludes

Counter-Plaintiffs from pursuing this action because Fitzner did not disclose his interest in BFI,

that the bankruptcy court adopted Fitzner's bankruptcy schedules, which failed to disclose,

itemize or accurately identify either BFI or the registration.  Counter-Plaintiffs contend that

judicial estoppel may not be invoked if the omission was inadvertent.

"Courts in numerous cases have precluded debtors or former debtors from pursuing

claims about which the debtors had knowledge, but did not disclose, during the debtors'

bankruptcy proceedings." *In re Coastal Plains, Inc*., 179 F.3d 197, 208 (5th Cir. 1999).  The

Sixth Circuit has held that judicial estoppel is inappropriate where the conduct is nothing more

than mistake or inadvertence.  *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir. 2002).

> The Fifth Circuit, in *In re* Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999),
> defined two circumstances under which a debtor's failure to disclose a cause of

action in a bankruptcy proceeding might be deemed inadvertent. One is where the debtor lacks knowledge of the factual basis of the undisclosed claims, and the other is where the debtor has no motive for concealment.

*Id.*

Here, Fitzner lacked knowledge of the claims at the time of the bankruptcy and thus his failure to disclose any claims relating to the trademark was inadvertent.  However, because beneficial title still remains in the bankruptcy estate, Counter-Plaintiffs have the standing – but not the capacity – to bring the Counter-Claim against Plaintiffs/Counter-Defendants.

## III.    CONCLUSION

For the reasons stated, the Court:

(1) DENIES Plaintiffs/Counter-Defendants' Motion to Dismiss without prejudice for lack of standing; and

(2) HOLDS that Counter-Plaintiffs lack capacity to bring or defend a suit regarding the HOMESTEAD MORTGAGE trademark.

**SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 19, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 19, 2007.

S/Denise Goodine
Case Manager