UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUARANTY RESIDENTIAL LENDING,
INC., a Nevada Corporation, and
ASSURAFIRST FINANCIAL COMPANY,
a Michigan Corporation d/b/a HOMESTEAD
USA and HOMESTEAD MORTGAGE,

    Plaintiffs, Counter-Defendants,
    Cross-Plaintiffs

CASE NO. 04-74842

v.

PAUL D. BORMAN
HOMESTEAD MORTGAGE COMPANY,    UNITED STATES DISTRICT JUDGE
L.L.C., a Michigan Corporation,

    Defendant, Counter-Plaintiff, and

BOB FITZNER d/b/a HOMESTEAD
MORTGAGE CO., an Individual,

    Counter-Plaintiff, Cross-Defendant
_____/

## OPINION IN SUPPORT OF COURT ORDER OF APRIL 11, 2007 GRANTING COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTER-PLAINTIFFS' COUNTERCLAIMS (DOCK. NO. 122)

Now before the Court is Counter-Defendants Guaranty Residential Lending Inc. ("Guaranty") and AssuraFirst Financial Company's ("AssuraFirst") (collectively "Counter-Defendants") Motion to Dismiss Counter-Plaintiffs Homestead Mortgage L.L.C.'s ("Homestead") and Bob Fitzner's ("Fitzner") (collectively "Counter-Plaintiffs") Counterclaims.

The Court held a motion hearing on April 11, 2007. At the conclusion of the hearing, the Court announced its decision GRANTING Counter-Defendants' Motion to Dismiss Counter-

1

Plaintiffs' Counterclaims.  This opinion follows.

I.    BACKGROUND

Counter-Plaintiff Homestead is a Michigan corporation with its principal place of business based in Macomb Township, Michigan. (Counter-Pls.' Countercl. ¶ 3).  Counter-Plaintiff Fitzner is an individual residing in Austin, Texas.  (*Id*. at ¶ 4).  Fitzner incorporated Bob Fitzner, Inc. ("BFI.") in Texas on April 21, 1992, of which he was the sole shareholder.  (Dec. 13, 2005, Opinion and Order 2).

Counter-Defendant Guaranty is a Nevada corporation with its principal place of business in Austin, Texas.  (Counter-Pls.' Countercl. ¶ 5).  AssuraFirst, doing business as "Homestead USA" and "Homestead Mortgage," is a Michigan corporation with its principal place of business in Southfield, Michigan.  (*Id*. at ¶ 6).  Guaranty and AssuraFirst provide, offer, market, and facilitate mortgage services for real estate transactions, as well as other financial and mortgage related transactions.  (Counter-Pls.' Countercl. ¶ 10).

Counter-Plaintiff Homestead was formed by Darren Chase.  Chase, who previously operated as a mortgage broker, had maintained a business relationship with Guaranty and had prior knowledge of the marks at issue in this case.  (Jan. 14, 2005, Opinion and Order 3).

On November 8, 1993, BFI registered the HOMESTEAD MORTGAGE mark (the "Mark") with the United States Patent and Trademark Office on March 12, 1996.  (*Id*.).  Fitzner claims that Fitzner, BFI, and/or any predecessor-in-interest have used the Mark in Texas since June of 1992.  (Counter-Pls.' Br. Ex A, Service Mark Principal Register).  According to the Certificate of Registration for HOMESTEAD MORTGAGE, BFI alleged the Mark was first used in August of 1991.  (*Id*.).

2

Counter-Plaintiffs claim that Fitzner is the owner of all right, title, and interest in the HOMESTEAD MORTGAGE mark, U.S. Trademark Registration No. 196129. Counter-Plaintiffs also claim that Guaranty and AssuraFirst "actively and continuously" used one or more of the following marks in association with mortgage related services: "Homestead," "Homestead Mortgage," "Homestead USA," "Homestead Mortgage USA, Inc.," "Homestead Mortgage Company," and "Homestead Funding USA, Inc." (Dec. 13, 2005, Opinion and Order 3).

In May of 1998, a Michigan corporation operating under the name of Homestead Mortgage Company ("HMC"), as predecessor-in-interest to Counter-Defendants, applied for registration of the Mark for mortgage lending and brokerage services with the United States Patent and Trademark Office. (*Id.*). The application was denied by the Examining Attorney on the ground that HMC's use of the Mark would cause confusion with the HOMESTEAD MORTGAGE mark owned by BFI (*Id.*). Despite the denial of its application, HMC expanded their use of the Mark to Texas, as early as 1999.[1] (Dock. No. 111, Counter-Defs.' Supplemental Br. 5-6).

On August 1, 2001, Fitzner filed for personal bankruptcy in the Northern District of Texas.[2] (Counter-Pls.' Resp. Ex. D). BFI's *corporate privileges* had been previously forfeited on March 20, 2001, for failure to satisfy Texas franchise tax requirements, and BFI forfeited its *corporate charter* on March 22, 2002, pursuant to Section 171.309 of the Texas Tax Code. (Counter-Defs.' Br. Ex C, Forfeiture Determination). Fitzner's bankruptcy case was initially

---

[1] Plaintiffs/Counter-Defendants allege that the Mark was used in the same counties in Texas in which Fitzer and BFI used the Mark.

[2] *In Re* Bobbie Fitzner, No. 01-70668.

3

closed on January 29, 2002, after the Trustee reported "no assets." A Motion to Reopen was filed by Fitzner on January 10, 2003, for the benefit of a creditor, and granted on February 11, 2003. The reopened bankruptcy case did not close until January 22, 2006.

On December 10, 2004, Guaranty filed a Complaint against Homestead.[3] AssuraFirst was not a Plaintiff in the Original Complaint filed by Guaranty; AssuraFirst was added in an Amended Complaint on June 22, 2005. Guaranty filed a Motion for Temporary Restraining Order and Motion for Preliminary Injunction on December 24, 2004, seeking to prevent Homestead from using the Mark. The Court granted Guaranty's Motion for a Temporary Restraining Order on December 30, 2004. The Court also granted Guaranty's Motion for Preliminary Injunction on January 14, 2005.

At some point during these proceedings, Homestead located Fitzner and BFI. On January 17, 2005, BFI assigned the Mark to Fitzner for one dollar and valuable consideration, effective as of March 8, 2002. Immediately thereafter, Homestead and Fitzner entered into a license agreement, signed by Fitzner on January 17, 2005, and by Homestead on January 26, 2005. Through the license agreement, Homestead utilized the Mark in connection with mortgage brokerage services in Michigan, along with the right to bring suit for all past, current or future infringements of the mark.

On June 22, 2005, Guaranty and AssuraFirst filed an Amended Complaint alleging

---

[3] The Counts in the Complaint (Dock. No. 1) and Amended Complaint (Dock. No. 34) were as follows:
    Count I:      Unfair Competition under 15 U.S.C. § 1125(a)
    Count II:     Unjust Enrichment
    Count III:    Common Law Trademark Infringement
    Count IV:    Common Law Unfair Competition

Unfair Competition under the Lanham Act, Common Law Unfair Competition, Unjust Enrichment and Common Law Trademark Infringement. Homestead and Fitzner filed their Answer and Counterclaim to Plaintiff's Amended Complaint, alleging Infringement of a Federally Registered Trademark, False Designation of Origin and Unfair Competition, and a violation of the Michigan Consumer Protection Act on July 5, 2005.

Counter-Defendants filed a Motion to Dismiss the Counter-Complaint on December 9, 2005. The Court denied Counter-Defendants' motion on October 24, 2006. *Guaranty Residential v. Homestead Mortgage*, 463 F. Supp. 2d 651 (E.D. Mich. 2006). In the same ruling, the Court held that Counter-Plaintiffs lacked capacity to bring or defend a suit regarding the HOMESTEAD MORTGAGE trademark. *Id.* at 662. On November 7, 2006, Counter-Plaintiffs filed a Motion for Reconsideration and a Motion for Clarification of this Courts' October 24, 2006 ruling. That same day, Counter-Defendants also filed a Motion for Reconsideration. On February 12, 2007, the Court denied all three motions.

Also, following this Court's October 24, 2006 ruling, Fitzner filed a Motion to Reopen Fitzner's bankruptcy proceeding in U.S. Bankruptcy Court for the Northern District of Texas. A hearing was held before Judge Harlin Hale on December 20, 2006. The Texas Bankruptcy Court denied Counter-Plaintiffs' motion on December 22, 2006. (Defs.' Br. Ex. B, Bankruptcy Order). In denying the motion, the court stated:

> Debtor's motion seeks to reopen the case for the express purpose of abandoning the trademark to the Debtor. Essentially, Debtor is seeking to clear up the problem of ownership so that he may continue his litigation. Under that plan of action, the bankruptcy estate and the creditors would receive little benefit from the reopening.
>
> There are other equities which tilt against reopening. The case is over five years old. The Debtor has unilaterally acted with control over the trademark, though it belongs to the bankruptcy estate. Debtor has profited from the trademark, although it belongs

5

> to the bankruptcy estate.  The previous chapter 7 Trustee has expressed no interest in reopening the case, and administering the trademark.  <u>The Debtor has litigated against Assurafirst, and has claimed complete and unequivocal ownership of the trademark, and now, only after losing on that issue, returns to this Court to obtain the trademark by abandonment so that he may continue his litigation.  The inconsistent positions of the Debtor in this Court and the litigation, the delay, and the exercise of control over, and profit from, an asset which belongs to the bankruptcy estate weigh against granting Debtor's Motion</u>.

(*Id*.) (emphasis added).  That December 2006 ruling by the Bankruptcy Court in the Northern District of Texas was not appealed by Counter-Plaintiffs.

On January 23, 2007, upon a request by Fitzner as the sole shareholder and officer of BFI, the Texas Secretary of State reinstated BFI's corporate privileges and charter.  Counter-Plaintiffs claim that BFI's charter and privileges are retroactively reinstated to March 20, 2001.

Counter-Defendants filed the instant Motion to Dismiss for lack of capacity, pursuant to Fed. R. Civ. P. 17(b), on January 25, 2007.  Counter-Plaintiffs filed their Response on February 19, 2007.  Counter-Defendants' filed a Reply on March 9, 2007.

Counter-Defendants argue that dismissal of the Counter-Claims are warranted under Federal Rule of Civil Procedure 17 because the time has expired for appealing this Court's October 24, 2006 Opinion and Order, and the Texas Bankruptcy Court's December 22, 2006 Order.  Counter-Defendants contend that upon this Court's October 24, 2006 Opinion and Order holding that Counter-Plaintiffs lacked capacity, Counter-Plaintiffs attempted to obtain capacity from the Texas Bankruptcy Court and were subsequently denied.  Counter-Defendants also argue that Counter-Plaintiffs pleadings in this Court and the Texas Bankruptcy Court were contradictory, thus reinforcing the futility of Counter-Plaintiffs' argument.  Therefore, Counter-Defendants submit that the explicit rulings in the above orders hold that Counter-Defendants lack capacity to sue.

Counter-Plaintiffs contend that (1) Fitzner has capacity to enforce the Mark; (2) Homestead, under Michigan law, has capacity to pursue the claims and counterclaims for which it has standing to sue; and (3) because Fitzner and Homestead each can sue and be sued, they have capacity. Counter-Plaintiffs submit that a lack of beneficial interest does not affect their capacity to bring their claim for infringement of a federally registered trademark in a federal court in Michigan. Counter-Plaintiffs also argue that beneficial interest in the Mark does not affect their claims of unfair competition and violation of the MCPA. Counter-Plaintiffs submit that any defect in capacity is not an automatic ground for dismissal and may be cured. To that end, Counter-Plaintiffs aver that if any defect in capacity existed at the time of this Court's October 24, 2006 Opinion and Order, it has since been corrected by reinstating BFI's privileges.

## II.   ANALYSIS

### A.   Standard of Review

Federal Rule of Civil Procedure 12 governs dismissal of claims. A complaint brought under Federal Rule of Civil Procedure 12(b)(6) should not be dismissed for failure to state a claim, "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Hoover v. Ronwin*, 456 U.S. 558, 587 (1984). For purposes of a motion to dismiss, the pleadings and affidavits are viewed "in a light most favorable to the Plaintiff." *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003). All factual allegations and any inferences derived from those allegations must be accepted as true. *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "If, on a [motion to dismiss] . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgement and disposed of

as provided in Rule 56, and all parties shall be given reasonable opportunity to represent all material made pertinent to such a motion by Rule 56. FED. R. CIV. P 12(b).

Counter-Defendants move for dismissal pursuant to Rule 17(b). It is more appropriate for this Court to construe the motion as 12(b)(6) motion for dismissal on the grounds of Rule 17(b) lack of capacity. *See Michaelesco v. Estate of Richard*, 288 B.R. 646, 653 n.7 (D. Conn. 2003) ("Even though the defense of lack of capacity is not expressly mentioned in Fed. R. Civ. P. 12(b), the Bankruptcy Court's treatment of Estate's capacity argument as one made under Fed. R. Civ. P. 12(b)(6) . . . follows a traditional practice."); *Lombardi v. Peace*, 259 F. Supp. 222, 223, 226 (S.D.N.Y. 1966) ("Defendant moves for an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure dismissing plaintiff's complaint on the grounds of lack of jurisdiction, failure to state a claim upon which relief may be granted and incapacity to bring suit.");

Federal Rule of Civil Procedure 17(b) provides that "[t]he capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."

    **B.**    **Discussion**

        **1.**    **Count I**

Counter-Defendants argue that due to this Court's October 24, 2006 Opinion and Order and the Texas Bankruptcy Court's December 22, 2006 Order, the case should be dismissed. Counter-Defendants assert that the time has expired for appealing this Court's October 24, 2006 Opinion and Order and the Texas Bankruptcy Court's December 22, 2006 Order. Thus, Counter-Defendants submit that dismissal, pursuant to Federal Rule of Civil Procedure 17(b), is

8

appropriate.

Counter-Plaintiffs' respond that Fitzner and Homestead have always had capacity, pursuant to the laws of Texas and Michigan, respectively.

The arguments raised by Counter-Plaintiffs in their Response were previously considered and denied in the Court's October 24, 2006 Opinion and Order and in the Court's February 12, 2007 Opinion and Order denying the parties' Motions for Reconsideration. The law of the case doctrine "states that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Patterson v. Haskins*, 470 F.3d 645, 660-61 (6th Cir. 2006) (citation omitted). The doctrine was developed to keep rulings consistent and avoid repetitious reconsideration of matters that have already been decided course of a continuing lawsuit. *Rosales-Garcia v. Holland*, 322 F.3d 386, 398 n.11 (6th Cir. 2003). Since Counter-Plaintiffs responsive arguments only reiterate the position taken in prior pleadings, the Court's orders operate as law of the case. Counter-Plaintiffs are also collaterally estopped from making arguments contrary to the Texas Bankruptcy Court's Order of December 22, 2006. It bears noting, and indeed emphasizing, that it was Counter-Plaintiffs that moved to reopen the proceedings in the Texas Bankruptcy Court. That Bankruptcy Court held an extensive hearing and ruled against Counter-Plaintiffs. Yet Counter-Plaintiffs did not seek reconsideration or appeal of that ruling.

"Under 11 U.S.C. § 554(c) and (d), any asset not scheduled pursuant to 11 U.S.C. § 521(1) is not deemed abandoned and remains property of the estate and the debtor loses *all rights* to enforce it under his own name . . . ." *In Re Lawley,* No. 04-42060, 2006 WL 2090209, *10 (Bankr. S D. Tex. Jun. 30, 2006) (emphasis added).

9

At the instant motion hearing, Counter-Plaintiffs argued that the Bankruptcy Court's Order, which stated that the Mark was part of the estate, was made in error since this Court only held that beneficial title was in the bankruptcy estate. Counter-Plaintiffs submit that the Bankruptcy Court's Order should be read in the context of this Court's October 24, 2006 Opinion and Order, and therefore only holds that beneficial title remained in the bankruptcy. Counter-Plaintiffs also argued at the motion hearing that the issue of equitable title was never raised at the bankruptcy hearing. This Court cannot agree. It was Counter-Plaintiffs, not Counter-Defendants, who motioned to reopen Fitzner's bankruptcy estate for the purpose of attaining the unscheduled asset. Further, Fitzner's counsel at its Texas Bankruptcy Court hearing, commented on equitable title, arguing that equitable title was all that was in the bankruptcy estate.[4] Judge Hale ruled otherwise. Upon the denial of their motion, Counter-Plaintiffs did not file a Motion for Reconsideration or a Motion for Clarification, nor did they appeal Judge Hale's decision. In fact, Counter-Plaintiffs did not raise the argument that the Bankruptcy Court's order erred in stating that the Mark was part of the bankruptcy estate until the motion hearing before this Court. Now Counter-Plaintiffs argue that there was an error in Bankruptcy Judge Hale's order. This Court finds that it is not the proper time, nor court, for that argument to be made. Therefore, the Court reads Judge Harlin Hale's findings as written; the Mark is part of the bankruptcy estate.

Accordingly, the Court does not find persuasive Counter-Plaintiffs' argument that Fitzner

---

[4] "However, if the Court doesn't see that was done, we're saying that then there is an equitable interest in this estate that the estate should be reopened, because that's cause for reopening the estate, and that that should be administered. (Counter-Defs.' Reply Ex. A, 12/20/06 Bankruptcy Hearing Transcript 118).

and Homestead always had capacity.

In the alternative, Counter-Plaintiffs argue, just as they did in their Motion for Reconsideration, that they have capacity to sue in federal court in Michigan. Counter-Plaintiffs assert that the loss of corporate privileges only affects the corporation's right to sue in a Texas state court, and does not prevent the corporation from maintaining proceedings in any other courts, including the Eastern District of Michigan. Counter-Plaintiffs maintain that BFI could assign its rights to the Mark even after its corporate privileges had been forfeited, and once that assignment was completed, Fitzner and Homestead had the right and capacity to assert the Mark's registration.

Counter-Plaintiffs rely on *El T. Mexican Restaurants v. Bacon*, 921 S.W.2d 247 (Tex. App. 1995). In *El T.*, a corporation had its charter forfeited for failing to pay franchise taxes, but was never dissolved. *Id*. at 248. A jury found in favor of Bacon and El T. appealed arguing, among other things, lack of standing and capacity. *Id*. at 249. The court, on appeal, was asked whether the sole shareholder could bring a suit personally and recover individually on the corporation's cause of action. *Id*. The court found that legal title to corporate assets remains in the corporation after bifurcation due to the charter forfeiture and that a corporation with legal title may still "dispose of [a] cause of action even without resorting to Texas state courts." *Id*. at 252. To put it another way, the court held that a corporation whose charter was forfeited could still maintain a cause of action in a jurisdiction other than Texas. *Id*.

Following *El T.*, Counter-Plaintiffs' argue that they have capacity because they can maintain a cause of action, after BFI's charter forfeiture, in a court outside the State of Texas. However, *El T.* is not analogous to the instant case. First, BFI is not involved in this litigation,

11

and Fitzner is not suing on behalf of BFI.  Second, in *El T*., the matter was not complicated by a bankruptcy and the failure of a sole stockholder to schedule beneficial interest in a corporate asset.  While a corporation can transfer its assets, and BFI did so, BFI is not maintaining an action in any court, let alone a case in this federal district.  The Court is well aware that "the provision of the Texas [forfeiture] statutes . . . are aimed at protection of the state revenue . . . ." *Rosenblum v. Dingfelder*, 111 F.2d 406, 408 (2d Cir. 1940).  However, Counter-Plaintiffs appear to focus, albeit incorrectly, on the loss of the corporate charter and the forfeiture of BFI's charter, when arguing that Fitzner has capacity.  Thus, while Counter-Plaintiffs argue that they still have capacity to bring a suit in this Court, they miss the issue.  The Court's October 24, 2006 Opinion and Order focused on the effect of the bankruptcy and the bankruptcy estate's ownership in the Mark.  While the forfeiture of the charter was important in addressing the bifurcation of legal and beneficial title, its discussion was only necessary to explain the how the bankruptcy estate ended up with beneficial title in the Mark.  What a corporation can do after it forfeits its corporate privileges in Texas is not relevant in this case.  Fitzner failed to schedule his interest in the Mark and that became property of the bankruptcy estate.  Accordingly, Counter-Plaintiffs still lack capacity to bring a suit regarding the Mark in this Court, and, following Judge Hale's ruling and order, the bankruptcy estate still owns the Mark.

Counter-Plaintiffs' final argument is that any alleged defect in their capacity which existed at the time of the October 24, 2006 Opinion and Order has been corrected by the reinstatement of BFI's charter and corporate privileges.  Counter-Defendants submit that reviving the charter and privileges does not give the corporation beneficial title to the Mark.  Counter-Defendants assert that Counter-Plaintiffs' argument is inapposite to its earlier pleadings

where they argue that all rights in the Mark were assigned from BFI to Fitzner on July 5, 2005.

According to the Texas Tax Code, a corporation whose charter has been forfeited may obtain reinstatement of its charter and corporate privileges by paying its delinquent taxes together with any penalties and interest thereon. TEX. TAX. CODE ANN. §§ 171.312-315. "Under Texas law, the reinstatement of a corporation's charter will relate back and will revive whatever rights the corporation had at the time the suit was filed." *Marre v. United States*, 38 F.3d 823, 828 (5th Cir. 1994) (citation omitted).

Counter-Plaintiffs imply that simply reviving BFI's charter takes any asset, which was owned by the corporation at the time its charter was forfeited, out of the bankruptcy estate and places it back with BFI. The Court does not agree. Counter-Plaintiffs attempted to reopen Fitzner's bankruptcy estate in order to remove the asset, but Bankruptcy Judge Hale denied their motion. Since the order was not appealed, the Bankruptcy Court's holding that the Mark would remain part the estate, was a final ruling on the matter. Thus, Counter-Plaintiffs reinstatement of the charter, as a backdoor attempt to retrieve the asset, does not have the desired outcome because Fitzner lacks the authority to reinstate the charter in order to free assets from the bankruptcy estate. *See In Re* Lawley, 2006 WL 2090209 at *4-5. More specifically, Fitzner "does not have the authority [] because the bankruptcy estate retained the unscheduled asset[]." *Id*. at *4.

Simply put, this Court does not agree that a bankruptcy estate can be deprived of its asset solely by a corporation "grabbing" the assets through a simple reinstatement of its charter, as Counter-Plaintiffs contend it can. The Bankruptcy Court had an opportunity to remove the asset from the bankruptcy estate, and it declined to do so.

Similar to *In Re* Lawley, in the instant case, Fitzner "cannot be allowed to defraud his creditors by consciously omitting reference to claims in his own bankruptcy, and then, upon emerging from bankruptcy, attempting to reclaim them" by reinstating BFI's charter. *Id*. Further, Counter-Plaintiffs are asking this Court to ignore Judge Hale's order finding that the Mark was part of the bankruptcy estate and, in effect, deny giving Judge Hale's order full faith and credit. This Court declines to do so. Therefore, the Court finds that no defect in capacity was corrected by the reinstatement of BFI.[5]

Accordingly, the Court grants Counter-Defendants' Motion to Dismiss on Count I.

### 2. Counts II and III

Neither party takes the time to argue thoughtfully these counts. Counter-Plaintiffs argue that even if the Court finds that Counter-Defendants' lack of capacity prevents them from pursuing their claim for Infringement of federally registered trademark under 15 U.S.C. § 1114, it should not have any bearing on their counter-claims for unfair competition and violation of the MCPA. Counter-Plaintiffs assert that Counts II and III do not require that the claimant possess any interest in a federal registration.

The Court again disagrees. The standards for the federal claims of false designation of origin and unfair competition under the Lanham Act are the same as those for trademark infringement. *Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw, Inc*., 452 F. Supp. 2d 1 (D.D.C. 2006). "Likewise, common law unfair competition claims and unfair business

---

[5] The Court further notes that Counter-Plaintiffs have continually claimed, as mentioned in their counterclaims and on Fitzner's Application for Renewal of Registration of Mark, that Fitzner, not BFI, owned the trademark. (*See* Answer and Counterclms. ¶¶ 8-9; Defs.' Reply Ex. C, Application for Renewal of Registration of a Mark).

practices under the Michigan Consumer Protection Act are governed by the same standards as the Lanham Act." *Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc.*, 471 F. Supp. 2d 822 (E.D. Mich. 2007) (citing *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 605 (6th Cir. 1991)).

It is true that Counter-Plaintiffs' False Designation of Origin and Unfair Competition claim, and their MCPA unfair business practice claim, do not require trademark registration as an element. Likelihood of confusion is the determining factor. *See generally Van Dyke Liquor Market*, 471 F. Supp. 2d 822. However, Counter-Plaintiffs' Counts II and III are based upon Fitzner's ownership of the Mark and Counter-Defendants' use of said Mark, which allegedly caused injury to Counter-Plaintiffs. (Counter-Pls.' Countercl. ¶¶ 26-34). As stated above, this Court has found that Counter-Plaintiffs do not have capacity to bring a suit based upon the Mark, and the Texas Bankruptcy Court has found that the Mark belongs to the bankruptcy estate. With that in mind, the Court does not see a way in which Counts II and III can remain due to Counter-Plaintiffs' lack of capacity.

## III.    CONCLUSION

For the reasons stated, the Court GRANTS Counter-Defendants' Motion to Dismiss Counter-Plaintiff's Counterclaims.

**SO ORDERED.**


                s/Paul D. Borman
                PAUL D. BORMAN
                UNITED STATES DISTRICT JUDGE

Dated:  April 17, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 17, 2007.

s/Denise Goodine
Case Manager